<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KANDICE ALSTON and JAI AND JAY CLEANING SERVICES, LLC, <br><br> *Plaintiffs*, <br><br> v. <br><br> TD BANK, N.A. and JOHN DOES 1 to 10, <br><br> *Defendants*. | Case No.: 2:24-cv-06721-JKS-CLW <br><br> **OPINION** <br><br> February 13, 2025 |

**SEMPER**, District Judge.

Before the Court is Defendant TD Bank, N.A.'s ("TD Bank" or "Defendant") motion to dismiss Plaintiffs Kandice Alston ("Alston") and Jai and Jay Cleaning Services, LLC's ("JJCS" and together with Alston, "Plaintiffs") Complaint (ECF 1-1, "Compl."). (ECF 10-1 "Def. Br.") Plaintiffs opposed the motion. (ECF 14, "Opp.") Defendant filed a reply. (ECF 15, "Reply.") The Court considered Plaintiffs' Complaint and the parties' submissions, and the motion was decided without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's motion is **GRANTED**.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]**

This purported class action arises from unauthorized transactions involving JJCS' TD Bank account. Alston is the sole owner and operator of JJCS, which provides cleaning services. (Compl. ¶¶ 7-8, 15.) Upon opening JJCS, Alston opened a bank account to store JJCS' working funds and

---

[1] When considering a motion to dismiss under Rule 12(b)(6), the Court is obligated to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

savings. (*Id.* ¶ 15.) In evaluating banking providers, Alston alleges she "prized security and safety above all else." (*Id.* ¶ 16.) Relying on TD Bank's representations regarding safety and security, Alston opened a TD Bank account for JJCS (the "Account") in March 2021 for "a combination of business and personal purchases." (*Id.* ¶¶ 21-22.) A Business Deposit Account Agreement ("BDA Agreement") governs the Account. (*Id.* ¶ 17.)

Between May 8, 2023 and July 18, 2023, TD Bank allowed unauthorized third parties to access the Account and use or withdraw approximately $3,985.75 through several transactions. (*Id.* ¶ 23.) These transactions included a purchase from a pool supply company for over $2,000 and charges from fast-food chains. (*Id.* ¶¶ 29, 33.) The unauthorized transactions occurred in California and Florida. (*Id.*) Alston did not initiate or authorize any of these transactions. (*Id.*) She only used her bank card in New Jersey and surrounding states. (*Id.* ¶ 31.) On July 17, 2023, Alston received a "fraud text message" from TD Bank stating a Cash App transaction was made from the Account. (*Id.* ¶ 25.) Alston did not authorize the Cash App transaction. (*Id.* ¶ 26.) On July 17, 2023, TD Bank notified Alston that her bank card was now locked. (*Id.* ¶ 27.)

On July 19, 2023, Alston submitted a formal claim notifying TD Bank that she had been defrauded $3,985.75. (*Id.* ¶ 37.) On July 19, 2023, Plaintiffs received a letter from TD Bank acknowledging the claim. (*Id.* ¶ 39.) A few weeks later, TD Bank began to return the funds through a series of provisional credits. (*Id.* ¶ 40.) On August 8, 2023, Plaintiffs received three letters from TD Bank stating the Account had been credited $40.90, $576.41, and $3,248.65. (*Id.*) On August 9, 2023, Plaintiffs received a letter from TD Bank notifying them the Account had been credited $149.67. (*Id.*)

However, on August 14, 2023, Plaintiffs received a letter from TD Bank notifying them the provisional credit of $576.41 would be reversed. (*Id.* ¶ 43.) On August 14, 2023, Plaintiffs received

another letter from TD Bank stating the provisional credit of $3,248.65 would be reversed. (*Id.*) On August 18, 2023, Plaintiffs received another letter from TD Bank that a provisional credit of $149.67 would be reversed. (*Id.*) The letters from TD Bank stated the "[t]ransactions appeared to be authorized by [Plaintiff,]" and the provisional credits were reversed. (*Id.* ¶ 44.)

On August 28, 2023, Alston reported the series of unauthorized transactions to an officer at the Edison Police Department. (*Id.* ¶¶ 47-48.) On August 29, 2023, Plaintiffs received a letter from TD Bank acknowledging the submission of an ATM/Debit Card claim for $3,919.87. (*Id.* ¶ 49.) On August 30, 2023, Plaintiffs received a letter from TD Bank stating the provisional credit of $40.90 would be reversed. (*Id.* ¶ 50.) On August 31, 2023, Plaintiffs received a letter from TD Bank stating the provisional credit of $3,919.87 would be reversed "due to the transactions 'appear[ing] to be authorized[.]'" (*Id.* ¶ 51.)

On September 6, 2023, Plaintiffs received a letter from Defendant regarding insufficient funds in the Account. (*Id.* ¶ 52.) On September 8, 2023, Plaintiffs received another letter from Defendant regarding insufficient funds. (*Id.* ¶ 54.) On September 14, 2023, Plaintiffs received a letter from TD Bank stating the provisional credit of $149.67 applied to the account on August 10, 2023 would be reversed. (*Id.* ¶ 55.) On October 17, 2023, Plaintiffs received another letter from TD Bank regarding insufficient funds in the Account. (*Id.* ¶ 56.) "On November 2, 2023, Plaintiffs received a letter from TD Bank regarding a provisional credit of $149.67 applied to the account on August 10, 2023 stating the credit is final." (*Id.* ¶ 57.)

On November 7, 2023, Plaintiffs received an email from Defendant regarding the Account's insufficient funds, stating the balance was -$4,428.92. (*Id.* ¶ 58.) On November 9, 2023, Plaintiffs submitted a customer service letter to TD Bank about the unauthorized charges and TD Bank's apparent lack of investigation. (*Id.* ¶ 59.)

3

Between November 2023 and January 2024, Alston contacted TD Bank via telephone several times, attempting to obtain documentation reviewed and relied on by TD Bank in its investigation. (*Id.* ¶ 60.) On January 9, 2024, Plaintiffs received a collection letter from Northstar Location Services, LLC regarding the overdrawn account. (*Id.* ¶ 61.) On January 16, 2024, Plaintiffs sent TD Bank another customer service letter. (*Id.* ¶ 62.) TD Bank has not provided Plaintiffs with documentation explaining its decision to reverse the provisional credits. (*Id.* ¶ 63.)

On May 1, 2024, Plaintiffs initiated this action in the Superior Court of New Jersey, Law Division, Essex County, bringing claims for negligence (Count One), breach of the implied covenant of good faith and fair dealing (Count Two), breach of fiduciary duty (Count Three), and violations of the New Jersey Consumer Fraud Act ("NJCFA") (Count Four). On June 5, 2024, TD Bank removed the case to this Court.[2] On July 3, 2024, TD Bank moved to dismiss. (ECF 10.)

## II.  LEGAL STANDARD

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under the Rule, it

---

[2] Defendant asserts the Class Action Fairness Act ("CAFA") gives this Court jurisdiction. "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "CAFA confers on district courts 'original jurisdiction of any civil action' in which three requirements are met: (1) an amount in controversy that exceeds $5,000,000, as aggregated across all individual claims; (2) minimally diverse parties; and (3) that the class consist of at least 100 or more members . . . ." *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014) (citing 28 U.S.C. § 1332(d)(2), (5)(B), (6); *Standard Fire Ins. v. Knowles*, 568 U.S. 588, 590 (2013)). "With respect to the second requirement, known as the 'minimal diversity' requirement, CAFA provides that [minimal] diversity is satisfied if 'any member of a class of plaintiffs is a citizen of a State different from any defendant.'" *Gallagher v. Johnson & Johnson Consumer Cos.*, 169 F. Supp. 3d 598, 602 (D.N.J. 2016) (quoting 28 U.S.C. § 1332(d)(2)(A)). "Although removal statutes must generally be strictly construed, with any doubt to be resolved in favor of remand, . . . the presumption against removal does not apply to class actions invoking [CAFA] jurisdiction . . . ." *Gallagher*, 169 F. Supp. 3d at 602. Here, all three CAFA requirements are met. Plaintiffs are New Jersey citizens, and Defendant is a citizen of Delaware. (Compl. ¶¶ 6-8; ECF 1, Notice of Removal ¶ 19.) Plaintiffs posit there are "thousands" of class members. (Compl. ¶ 76.) Plaintiffs' asserted damages of $3,974.73, multiplied by roughly 1000 class members, exceed the CAFA requirements. (ECF 1, Notice of Removal ¶¶ 21-22.) Accordingly, Defendant's removal was proper.

must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Restatements of a claim's elements are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

### B. Rule 9(b)

Federal Rule of Civil Procedure 9(b) imposes additional pleading requirements. "Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). Thus, pursuant to Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting

5

fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A party alleging fraud must therefore support its allegations with factual details such as "the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016). Accordingly, "[t]o satisfy the particularity standard, 'the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). This heightened standard is designed to "ensure that defendants are placed on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation marks omitted).

### III. ANALYSIS

#### A. Alston's Standing to Sue

Defendant argues Alston lacks standing to sue because her claims arise out of alleged injuries to JJCS, which stem from JJCS' contractual relationship with TD Bank. (Def. Br. at 24.)[3] In opposition, Alston claims she suffered independent injuries stemming from her personal stake in the business, including emotional injuries and inability to pay bills. (Opp. at 28.)

Plaintiffs' Complaint states JJCS is a New Jersey corporation, and Alston is its "sole owner and operator." (Compl. ¶¶ 7-8.) However, Plaintiffs' opposition brief states JJCS is a limited liability company. (Opp. at 26-29.) In either case, Alston lacks standing here.

---

[3] While Defendant raises this argument pursuant to Rule 12(b)(1), this Court, guided by Third Circuit precedent, addresses Defendant's challenge pursuant to Rule 12(b)(6). *See Potter v. Cozen & O'Connor*, 46 F.4th 148, 157 (3d Cir. 2022) ("In sum, the shareholder standing rule is a prudential rule, not a constitutional or jurisdictional one . . . . The District Court therefore should have treated the Lawyers' motion to dismiss for lack of shareholder standing as a motion under Rule 12(b)(6), instead of 12(b)(1).").

"It is well established that, absent a direct individual injury, [a] . . . shareholder of a corporation lacks standing to sue for an injury to the corporation." *Meade v. Kiddie Acad. Domestic Franchising, LLC*, 501 F. App'x 106, 108 (3d Cir. 2012) (citation omitted); *In re Kaplan*, 143 F.3d 807, 811-12 (3d Cir. 1998) ("The derivative injury rule holds that a shareholder (even a shareholder in a closely-held corporation) may not sue for personal injuries that result directly from injuries to the corporation."). Similarly, "[t]he Revised Uniform Limited Liability Company Act restricts the ability of an LLC member to assert claims that belong to the LLC." *Impact Protective Equip. v. Xtech Protective Equip.*, No. A-0879-19, 2021 N.J. Super. Unpub. LEXIS 624, at *17 (N.J. Super. Ct. App. Div. Apr. 14, 2021) (citing N.J. Stat. Ann. §§ 42:2C-67 to -68). Alston's claims all relate to injuries stemming from alleged unauthorized transactions involving JJCS' Account and the BDA Agreement between JJCS and TD Bank, rather than TD Bank's actions against Alston in her individual capacity. Alston therefore lacks standing to pursue the asserted claims and is **DISMISSED** from this action. *See Meade*, 501 F. App'x at 107-08 (holding that shareholder who signed agreement on behalf of corporation lacked standing to sue for injuries to corporation stemming from the agreement); *Kim v. M&T Bank*, No. 17-11810, 2018 U.S. Dist. LEXIS 145807, at *7-8 (D.N.J. Aug. 28, 2018) (holding that individual lacked standing to assert claims arising from agreements between corporation and bank); *Mariner's Bank v. 4921 Bergenline Corp.*, No. A-0676-12T2, 2014 N.J. Super. Unpub. LEXIS 120, at *15 (N.J. Super. Ct. App. Div. Jan. 23, 2014) ("[A] member of a limited liability company may not bring an action in his or her own name, to redress wrongs to the company, even if the member indirectly suffers harm as a result.").

### B. JJCS' Claims

#### a. Negligence (Count One)

To sustain a cause of action for negligence, a plaintiff must establish: "(1) a duty of care,

(2) a breach of that duty, (3) proximate cause, and (4) actual damages." *Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. 2015) (citations omitted). Defendant argues JJCS' negligence claim is barred by the economic loss doctrine. (Def. Br. at 11-13.) JJCS argues its claim is not barred because it sufficiently alleges TD Bank owed it an independent duty. (Opp. at 8-10.)

The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract." *Chen v. HD Dimension, Corp.*, No. 10-863, 2010 WL 4721514, at *8 (D.N.J. Nov. 15, 2010) (citing *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J. 2002)). "[T]he economic loss doctrine 'defines the boundary between the overlapping theories of tort law and contract law by barring the recovery of purely economic loss in tort, particularly in strict liability and negligence cases.'" *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 244 (3d Cir. 2010) (citation omitted). While JJCS does not assert a breach of contract claim, it states the BDA Agreement "applies to the Account at issue." (Compl. ¶ 17.) Defendant argues JJCS' negligence claim arises from conduct governed by the BDA Agreement. The Court agrees.

"Whether a negligence claim is barred by the economic loss doctrine turns on whether the party has asserted an independent duty apart from that imposed by the contract." *Dutton Rd. Assocs. LP v. Sunray Solar, Inc.*, No. 10-5478, 2011 U.S. Dist. LEXIS 39798, at *7 (D.N.J. Apr. 12, 2011) (citing *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 278 (N.J. 2002)). JJCS asserts TD Bank owed it a duty to exercise reasonable care to secure and safeguard financial assets and account information. (Compl. ¶ 86.) However, the BDA Agreement delineates TD Bank's obligations regarding account security and establishes security procedures. (Def. Br. at 11-12 (citing BDA Agreement at 40-41).) JJCS fails to identify any independent duty apart from those imposed by the BDA Agreement. *Beaman v. Bank of Am., N.A.*, No. 21-20561, 2024 U.S. Dist.

LEXIS 114248, at *52 (D.N.J. June 28, 2024) ("[T]he Court finds that Plaintiffs have not sufficiently alleged that the contractual relationship between Plaintiffs and BOA implicated an independent, reasonable duty of care irrespective of the duties under the Account Agreement."); *Beals v. Bank of Am.*, N.A., No. 10-5427, 2011 U.S. Dist. LEXIS 128376, at *46-47 (D.N.J. Nov. 4, 2011) ("The duties described are those that Bank of America owes not to the public at large, but rather to its borrowers pursuant to contract. . . . Because defendants owe plaintiffs no duty independent of the contract, plaintiffs have not stated a claim for which relief can be granted."). Therefore, JJCS' negligence claim is **DISMISSED without prejudice.**

> b. **Breach of the Implied Covenant of Good Faith and Fair Dealing (Count Two)**

Defendant argues JJCS fails to a state breach of implied covenant claim because JJCS does not plead facts establishing bad motive or intent. (Def. Br. at 17-18.) JJCS asserts Defendant "evaded its duties which evidenced a bad motive." (Opp. at 13.)

"Every party to a contract . . . is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 395 (N.J. 2005). This duty "calls for parties to a contract to refrain from doing 'anything which will have the effect of destroying or injuring the right of the other party to receive' the benefits of the contract." *Id.* at 396 (quoting *Palisades Props., Inc. v. Brunetti*, 207 A.2d 522, 531 (N.J. 1965) (citation omitted)). When claiming a breach of the implied covenant, a plaintiff must show "proof of bad motive or intention . . . sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." *Brunswick Hills Racquet Club*, 864 A.2d at 396 (internal quotation marks and citation omitted). JJCS states in a conclusory fashion

that "[Defendant] acted towards Plaintiffs and the Class in a manner that was opaque, dishonest, and self-serving, at a level sufficient to breach the implied duty of good faith and fair dealing." (Compl. ¶ 106.) This is not enough to support a breach of the implied covenant claim. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) ("[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."). Therefore, JJCS' implied covenant claim is **DISMISSED without prejudice.**

### c. Breach of Fiduciary Duty (Count Three)

Defendant argues JJCS' breach of fiduciary duty claim must be dismissed because JJCS fails to plead that Defendant owed it a fiduciary duty. (Def. Br. at 14-16.) JJCS asserts "Plaintiffs adequately show a trust and confidence relationship between Plaintiffs and Defendant which created a fiduciary duty to disclose[.]" (Opp. at 12.)

To establish a breach of fiduciary duty claim, a plaintiff must show "1) the existence of a fiduciary duty or relationship between the parties; 2) breach of that duty; and 3) resulting damages." *Read v. Profeta*, 397 F. Supp. 3d 597, 633 (D.N.J. 2019) (citation omitted). "A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship." *F.G. v. MacDonell*, 696 A.2d 697, 704 (N.J. 1997). "The essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position." *Id.* at 703-04.

"Generally, 'there is no presumed fiduciary relationship between a bank and its customer.'" *Remtek Servs. v. Wells Fargo Bank, N.A.*, No. 19-12790, 2020 U.S. Dist. LEXIS 7678, at *11 (D.N.J. Jan. 16, 2020) (quoting *United Jersey Bank v. Kensey*, 704 A.2d 38, 44 (N.J. Super. Ct. App. Div. 1997). However,

> [i]n *Kensey*, the Appellate Division of the New Jersey Superior Court articulated exceptions to the general rule that "creditor-debtor

10

> relationships rarely give rise to a fiduciary duty." Relying on the Restatement (Second) of Torts § 551, the Appellate Division explained that a duty may arise when a [bank] commits gross acts of misconduct or deceit, or under the "special circumstance" where a [bank] "knows or has reason to know that the customer is placing his trust and confidence in the bank and [is] relying on the bank . . . to counsel and inform him."

*Bank of Am., N.A. v. Westheimer*, 683 F. App'x 145, 149 (3d Cir. 2017) (quoting *Kensey*, 704 A.2d at 44-45). Here, JJCS fails to allege that TD Bank engaged in gross acts of misconduct or deceit or that a special circumstance existed.[4] Therefore, JJCS' breach of fiduciary duty claim is **DISMISSED without prejudice.** *Beaman v. Bank of Am., N.A.*, 21-20561, 2024 U.S. Dist. LEXIS 114248, at *70-71 (D.N.J. June 28, 2024) (dismissing breach of fiduciary duty claims based on alleged unauthorized banking transactions where plaintiffs failed to establish misconduct or special circumstances).

### d. NJCFA Claim (Count Four)

Defendant argues JJCS' NJCFA claim must be dismissed because it fails to meet the heightened pleading requirements of Rule 9(b). (Def. Br. at 23-24.) "To state a prima facie case under the NJCFA, a plaintiff must demonstrate three elements: (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011) (citing *Payan v. GreenPoint Mortg. Funding, Inc.*, 681 F. Supp. 2d 564, 572 (D.N.J. 2010)). "It is well-established that NJCFA claims must meet the heightened pleading requirements of [Rule] 9(b)." *Lieberson*, 865 F. Supp. 2d at 538. To satisfy this standard, "a plaintiff must state the circumstances of the alleged fraud

---

[4] Furthermore, the BDA Agreement expressly disclaims the existence of a fiduciary relationship. (Def. Br. at 15 (citing BDA Agreement at 19 ("This Agreement and the deposit relationship do not create a fiduciary, quasi-fiduciary, or special relationship between you and us. Our deposit relationship with you is that of a debtor and creditor.")).)

11

with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Id.* (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). This requires a plaintiff to allege the "who, what, when, where[,] and how" of a claim. *Crozier v. Johnson & Johnson Consumer Cos.*, 901 F. Supp. 2d 494, 506 (D.N.J. 2012) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004)).

JJCS asserts TD Bank violated the NJCFA "by offering products and services with the promise that the products and services are secure but then failing to adequately safeguard its customers merchandise[.]" (Compl. ¶ 119.) JJCS fails to identify any specific promises regarding security and whether and when it was aware of such promises. Accordingly, JJCS fails to satisfy Rule 9(b)'s heightened pleading standard. *Lieberson*, 865 F. Supp. 2d at 539 (explaining the plaintiff did not meet Rule 9(b)'s pleading standard because the complaint did not identify "when these statements were made or whether and when Plaintiff actually viewed them"); *Wilkins v. Navy Fed. Credit Union*, No. 22-2916, 2023 U.S. Dist. LEXIS 186935, at *9 (D.N.J. Oct. 18, 2023) (explaining Rule 9(b) standard not met when plaintiff failed to plead where and when defendant made allegedly misleading misstatements). Therefore, JJCS' NJCFA claim is **DISMISSED without prejudice.**

IV.   **CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss (ECF 10) is **GRANTED.** An order accompanies this opinion.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:   Clerk
cc:     Cathy L. Waldor, U.S.M.J.
        Parties

12