<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KANDICE ALSTON and JAI AND JAY CLEANING SERVICES, LLC, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> TD BANK, N.A., and JOHN DOES 1 to 10 <br><br> *Defendants*. | Civil Action No. 24-6721 <br><br><br> **OPINION** <br><br> April 30, 2026 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court on Defendant TD Bank, N.A.'s ("TD Bank" or "Defendant") Motion to Dismiss (ECF 23, "Motion" or "Mot.") Plaintiffs Kandice Alston and Jai and Jay Cleaning Services, LLC's First Amended Complaint (ECF 19, "FAC"). Plaintiffs opposed the Motion (ECF 30, "Opposition" or "Opp."), and Defendant replied in support (ECF 33, "Reply"). The Court has decided the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion is **GRANTED**.

## I.    <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]</u>

The facts of this case are well known to the parties, and the Court need not set them out in full here, as they are substantially unchanged from the Court's articulation of the facts in the

---

[1] The facts and procedural history are drawn from the Second Amended Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). For the purposes of a motion to dismiss, the facts drawn from the complaint are accepted as true. *See Fowler v. UMPC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

Opinion dismissing the original Complaint.  (ECF 16.)  In brief, Plaintiffs Jai and Jay Cleaning Services, LLC ("JJCS"), a New Jersey corporation, and Plaintiff Kandice Alston, the sole member and operator of JJCS, allege that Defendant TD Bank, N.A., a national banking association with a principal place of business at 1701 Marlton Pike East, Suite 200, Cherry Hill, New Jersey 08003, failed "to safeguard its customers' accounts and funds" by allowing "unauthorized third parties to access and utilize Plaintiffs' … checking account funds."  (FAC ¶¶ 1, 5, 6, 12.)  Plaintiffs allege that Defendant "failed to comply with Visa's Zero Liability Policy and the Business Deposit Account Agreement [('BDAA' or 'Agreement')]" made between the parties in this case upon the opening of the account.  (*Id*. ¶ 2.)

Plaintiffs allege that, in March of 2021, they opened an account (the "Account") with TD Bank for the purpose of having "a secure bank account to store the business' working funds and savings" and "to use it for a combination of business and personal purchases."  (*Id*. ¶¶ 12, 19, 20.)  Plaintiffs assert that at some point "between May 8, 2023, and July 18, 2023, TD Bank allowed unauthorized third-parties to either gain access to Plaintiff's Account and use approximately $3,985.75 of her funds or withdraw funds from the Account[,]" and that "[t]hese transactions were varied from pool supplies to numerous repetitive transactions with Apple and fast food chains.  (*Id*. ¶¶ 21, 27.)  Plaintiffs aver that they "never approved these transactions[.]"  (*Id*. ¶ 22.)  Plaintiffs allege that they disputed these transactions with TD Bank repeatedly, and that TD Bank repeatedly denied their claims and failed to properly investigate the allegedly fraudulent transactions.  (*Id*. ¶¶ 36-74.)

Plaintiffs allege that, due to "the theft of the Account funds and Defendant's denial of Plaintiff[s'] claims, Jai and Jay Cleaning Services, LLC has experienced severe impacts on both

2

its daily operation and its overall growth[,]" and "TD Bank's negligence has affected not just Ms. Alston's business, but also Ms. Alston herself." (*Id.* ¶¶ 80, 83.) [2]

On May 1, 2024, Plaintiffs filed the initial complaint in this case in the Essex County Superior Court, and on June 5, 2024, Defendant removed the action to this Court. (ECF 1.) On February 13, 2025, the Court dismissed the original complaint without prejudice in an opinion and order dated February 13, 2025. (ECF 16; ECF 17.) On March 17, 2025, Plaintiffs filed the FAC, asserting seven counts: Count I for breach of contract (*i.e.*, the BDAA); Count II for breach of the implied covenant of good faith and fair dealing; Count III for breach of fiduciary duty; Count IV for fraud; Count V for conversion; Count VI for unjust enrichment; and Count VII for violations of the New Jersey Consumer Fraud Act. (FAC ¶¶ 97-165.) Plaintiffs assert all counts on behalf of themselves and a class, which they define as follows:

> All persons with a TD Bank, N.A. account who suffered one or more unauthorized transactions on their account during the period beginning May 1, 2018, through and including the final resolution of this case, and were not duly reimbursed for those unauthorized transactions.

> All persons with a TD Bank, N.A. account who submitted an error dispute claim to TD Bank, N.A. during the period beginning May 1, 2018, through and including the final resolution of this case, and who did not receive any documentation used by TD Bank N.A. to support their determination.

> All persons with a TD Bank, N.A. account who with a TD Bank, N.A. account who were denied refunds for disputed unauthorized transactions on their accounts with TD Bank, N.A., during the period beginning May 1, 2018, through and including the final resolution of this case, in violation of the BDAA and VLP.

> All persons with a TD Bank, N.A. account who with a TD Bank, N.A. account who were denied refunds for disputed unauthorized transactions on their accounts with TD Bank, N.A., during the period beginning May 1, 2018, through and including the final resolution of this case, where TD Bank, N.A. violated the covenant of good faith and fair dealing by failing to investigate the transactions in good faith and by not providing documentation they used to support their determinations in relation to those disputes.

---

[2] The First Amended Complaint contains several paragraph-numbering errors. The paragraph cited as ¶ 83 in the Opinion appears as ¶ 2 on page 13 of the FAC. (ECF 19.)

> All persons with a TD Bank, N.A. account who with a TD Bank, N.A. account who were denied refunds for disputed unauthorized transactions on their accounts with TD Bank, N.A., during the period beginning May 1, 2018, through and including the final resolution of this case, where TD Bank was entrusted to investigate the claims and decide the accountholder's liability under the BDAA and VLP and violated their duty to act as a fiduciary by failing to investigate the transactions in good faith and acting as described herein.

> All persons with a TD Bank, N.A. account who with a TD Bank, N.A. account who were denied refunds for disputed unauthorized transactions on their accounts with TD Bank, N.A., during the period beginning May 1, 2018, through and including the final resolution of this case, where TD Bank, N.A. omitted the fact that it would not investigate disputes in good faith and that it would not provide documentation that support TD Bank, N.A.'s determination.

(*Id.* ¶ 84.)  Defendant filed the Motion to Dismiss on April 28, 2025 (ECF 23), Plaintiffs filed the Opposition on July 7, 2025 (ECF 30), and Defendant submitted its brief in Reply on July 21, 2025 (ECF 33).  Plaintiffs seek certification of the class; compensatory damages including actual damages and economic damages; punitive damages; attorney's fees and costs of suit; and pre- and post-judgment interest.  (FAC ¶¶ 113(a)-(f).)

## II.     LEGAL STANDARD

### a.  Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted[.]"  For a complaint to survive dismissal under the Rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations

omitted).  As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims."  *Id.* at 789.

### b.  Rule 9(b)

Federal Rule of Civil Procedure 9(b) imposes additional pleading requirements for claims of fraud.  "Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud."  *In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 216 (3d Cir. 2002).  Thus, pursuant to Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake . . . [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  A party alleging fraud must therefore support its allegations with factual details such as "the who, what, when, where and how of the events at issue."  *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016).  Accordingly, "[t]o satisfy the particularity standard, 'the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'"  *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).  This heightened standard is designed to "ensure that defendants are placed on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud."  *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation marks omitted).

### III.   ANALYSIS

### a.  Count I: Breach of Contract

Plaintiffs assert that "[u]nder the BDAA, Defendant assumed liability for unauthorized transactions that were (1) not processed in accordance with the Security Procedures; and (2)

covered by the Visa Zero Liability Procedure [('VLP')]." (FAC ¶ 98.) They further assert that "Defendant was contractually required to investigate the transactions and reimburse Plaintiff … for the unauthorized transactions at issue." (*Id.* ¶ 99.) Plaintiffs argue that they "should have been reimbursed under the contract because they were not processed in accordance with the Security Procedures and because they were covered by the VLP." (*Id.* ¶ 100.) Plaintiffs say that Defendant was contractually obligated to investigate the disputes and failed to do so, which resulted in "inconsistent, arbitrary decisions" that caused Plaintiffs to suffer losses. (*Id.* ¶¶ 101-106.)

In the Motion to Dismiss, Defendant argues that the breach of contract claim must be dismissed because, by signing the BDAA, Plaintiffs agreed to use the Account only for business purposes and not for any personal purchases, and that by stating in the FAC that they used the account "for a combination of business and personal purchases" (*id.* ¶ 20), Plaintiffs admit that they breached the terms of the BDAA before the allegedly fraudulent transactions occurred. (Mot. at 10-11.) Defendant cites *Frederico v. Home Depot*, 507 F.3d 188, 204 (3d Cir. 2007) as an example of dismissal of a contract claim being affirmed where the plaintiff had not performed her own obligations under the contract. (*Id.* at 11.) Defendant also argues that "the [BDAA] does not obligate TD Bank to investigate claims for reimbursement." (*Id.*) Defendant also notes that Plaintiffs attempt to shift the burden of pleading that the Visa Zero Liability policy applies to the transactions to Defendants. (*Id.* at 12.) Finally, Defendant argues that Plaintiffs have failed to plead facts establishing that they had rights to the Visa Zero Liability policy as third-party beneficiaries of the contract between Visa and TD Bank, because they failed to show that Visa and TD Bank intended to recognize a right to performance as to Alston and JJCS. (*Id.* at 13 (citing *Grant v. Coca-Cola Bottling Co. of New York*, 780 F. Supp. 246, 248 (D.N.J. 1991) ("In order to qualify as a third-party beneficiary, the claimant must show that the contract was made for the

6

benefit of [that] third party within the intent and contemplation of the contracting parties" (cleaned up).)

In the Opposition, Plaintiffs assert that Defendant's argument that Plaintiffs breached the Agreement by using the Account for business and personal purposes is an affirmative defense that would be prematurely adjudicated at the motion to dismiss stage, unless the alleged breach is "apparent on the face of the complaint," citing *Hoffman v. Nordic Nats., Inc.*, 837 F.3d 272, 280 (3d Cir. 2016). (Opp. at 11-12.) Plaintiffs argue that their personal use of the Account does not necessitate dismissal because it is unclear whether "Plaintiff's personal purchases were so pervasive as to violate the terms of the Account[,]" likening this case to *Broughton v. Adams Pontiac Buick GMC Truck, Inc.*, 272 F. App'x 491, 495 (6th Cir. 2008), in which the Sixth Circuit reversed a district court's grant of summary judgment because a genuine dispute of material fact existed as to whether the truck at issue in that case was purchased for commercial or personal uses. (*Id.* at 12.) Plaintiffs finally argue that, even if they did breach the Agreement, the proper remedy for Defendant would have been to block all transactions to and from the Account. (*Id.* at 12-13.) Defendant did not do this, so Plaintiffs assert that they have complied with their obligations under the Agreement. (*Id.* at 13.)

In the Reply, Defendant argues that *Broughton* does not apply here because the ambiguity at issue in that case does not exist in this one, as "Plaintiff's admission that it opened the Account for a mix of business and personal purposes is unambiguously a material breach." (Reply at 2.) Defendant also notes that the language about Defendant's ability to block transaction related to the Account is "a reservation of rights, not an exclusive remedy." (*Id.* at 3.) Defendant also argues that "Plaintiff cannot look to extraneous promotional language to modify the [Agreement's] terms." (*Id.* at 4.)

"To state a claim for breach of contract, [Plaintiffs] must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico*, 507 F.3d at 203.  Here, Plaintiffs' claim must fail because they admit in their own First Amended Complaint to materially breaching the express terms of the Agreement by improperly using the Account for a mix of business and personal purposes.  (FAC ¶ 20.)  The Agreement states unambiguously that Plaintiffs agreed "to use the Account for the business purposes only and not hold or maintain the Account for any personal, family or household purposes.  (Mot. Ex. B at 3.)  This situation is thus quite different from that of the truck at issue in *Broughton*, and it is clear from the face of the FAC that Plaintiffs violated the terms of the Agreement.  The Court cannot allow Plaintiffs to state a claim for breach of contract when they breached the contract first.  Count I is accordingly dismissed with prejudice.

### b.  Count II: Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiffs allege that TD Bank violated the implied covenant of good faith and fair dealing by acting "dishonestly, self-servingly, arbitrarily, opaquely, in bad faith, and deceptively when they refused to provide Plaintiff[s]…with the documents to which they have a right and when Defendant made its determinations that Plaintiff[s]…authorized the transactions at issue even though those decisions were arbitrary, inconsistent, opaque, not based in fact, and self-serving."  (FAC ¶ 120.)  Plaintiffs allege that "Defendant insists that the transactions are not fraudulent without providing any documentary evidence, even though it is company policy to do so."  (*Id.* ¶ 121.)  They further assert that "[c]onducting a good faith investigation to determine whether the transactions qualified for reimbursement and providing documents to support its findings are not explicit duties of Defendant per the BDAA, but are implied duties because Defendant's liability lies with its own

determination of whether the transaction was authorized or not." (*Id.* ¶ 123.) They assert that Defendant had this duty under its agreement with Visa as well. (*Id.*)

In the Motion to Dismiss, Defendant argues that Plaintiffs' implied covenant claim in the FAC mirrors the implied covenant claim in the original Complaint, and that its dismissal is just as warranted now as it was then. (Mot. at 14-15.) Specifically, Defendant argues that "[t]o the extent the obligation to provide documents arises as a matter of alleged 'company policy,' it is the sort of discretionary action that does not support a claim for breach of the implied covenant of good faith and fair dealing[,]" citing *Sarlo v. Wells Fargo Bank, N.A.*, 175 F. Supp. 3d 412, 424–25 (D.N.J. 2015) for the proposition that "[e]xercises of discretion for 'ordinary business purposes' do not constitute improper motive, and a plaintiff cannot satisfy the 'improper motive' element by merely alleging that a defendant's discretionary decisions benefitted the defendant and disadvantaged the plaintiff." (Mot. at 15-16.)

In the Opposition, Plaintiffs argue that "[t]he implied covenant of good faith and fair dealing operates exactly as if it had been written into the agreement, that Defendant would investigate the fraudulent activity in good faith, and to disclose and provide documents of the investigations into the unauthorized transactions." (Opp. at 9.) They argue that, even though the Agreement did not expressly impose on TD Bank a duty to share documents related to their investigation of Plaintiffs' disputed transactions, "the 'implied covenant of good faith and fair dealing may fill in the gaps where necessary[,]'" citing *Fields v. Thompson Printing Co.*, 363 F.3d 259, 272 (3d Cir. 2004). (*Id.*) To counter Defendant's argument that, per the terms of the Agreement, it had no duty to discover breaches of security or unauthorized transactions, Plaintiffs invoke *2006 Frank Calandra, Jr. Irrevocable Tr. v. Signature Bank Corp.*, 503 F. App'x 51, 54 (2d Cir. 2012) for the proposition that "a bank has a duty to make reasonable inquiries to prevent fraud

where it has notice or knowledge that a diversion is intended or being executed." (*Id.* at 10 (internal quotation marks omitted).)

In the Reply, Defendant reiterates its argument that Plaintiffs' "second effort at pleading breach of the implied covenant was substantively no different from its first: the FAC again asserts that TD Bank allegedly failed to investigate Plaintiff's fraud claims and refused to disclose related documentation, but adds no new facts in support of the missing element of bad faith." (Reply at 5-6.)

"Every party to a contract . . . is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 395 (N.J. 2005). This duty "calls for parties to a contract to refrain from doing 'anything which will have the effect of destroying or injuring the right of the other party to receive' the benefits of the contract." (*Id.* at 396 (quoting *Palisades Props., Inc. v. Brunetti*, 207 A.2d 522, 531 (N.J. 1965) (citation omitted))). When claiming a breach of the implied covenant, a plaintiff must show "proof of bad motive or intention . . . sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." *Brunswick Hills Racquet Club*, 864 A.2d at 396 (internal quotation marks and citation omitted).

Defendant is correct that Plaintiffs have largely rehashed their original claims with little— if any—additional facts that suggest a support a conclusion that TD Bank acted in bad faith in its investigation of the disputed transactions. Here again, Plaintiffs' "bald assertions" and "legal conclusions" about Defendant's alleged conduct do not provide the Court with a basis on which to find that Defendant breach the implied covenant of good faith and fair dealing. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). As such, Count II is dismissed with prejudice.

### c.  Count III: Breach of Fiduciary Duty

In Count III of the FAC, Plaintiffs allege that "[s]ince Plaintiff…entrusted [the power to investigate the disputed transactions and decide whether to issue refunds] and because Defendant had a duty to act for Plaintiff[s'] benefit within the scope of their relationship, a trust and confidence relationship in Defendant was necessarily implied."  (FAC ¶ 134.)  Because of this, Plaintiffs argue that "a fiduciary relationship was created where Defendant, who was in a dominant position, owed a fiduciary duty to Plaintiff[.]"  (*Id.*)  Plaintiffs argue that Defendant breached this fiduciary duty "[b]y failing to properly investigate the fraudulent transactions, failing to provide Plaintiff[s]…with documentation to support its findings, and arbitrarily and inconsistently deciding that certain transactions were fraudulent while virtually identical ones were authorized[,]" and that in so doing "TD Bank furthered its own interests over that of Plaintiff[s]…whether it acted intentionally or grossly negligently."  (*Id.* ¶135.)

In the Motion to Dismiss, Defendant argues that "no fiduciary duty outside the scope of the contract exists between Plaintiff and TD Bank, because bank-depositor relationships traditionally are non-fiduciary[,]" and because the "Agreement expressly disclaims the creation of a fiduciary relationship."  (Mot. at 17.)  Defendant also argues that the economic loss doctrine prevents Plaintiffs from asserting their breach of fiduciary duty claim because the relationship between the parties and the attendant remedies are all governed by the law of contract.  (*Id.* at 16-18.)

Plaintiffs counter that the economic loss doctrine does not operate to block their breach of fiduciary duty claim because "Plaintiffs adequately plead Defendant's independent duties and fiduciary duties" that Plaintiffs' assert were extrinsic to and beyond the scope of the Agreement.  (Opp. at 14-15.)  Plaintiffs also emphasize that Defendant fails to address the "superior position

11

Defendant is in over Plaintiff" and the fact that "Plaintiff entrusted Defendant with sole control of the disbursement of funds in Plaintiff's Account and afforded Defendant discretion in exercising that control." (*Id.* at 15, 17.)  They argue that the Agreement "does not apply to [the security aspect] of their relationship" and that "a trust and confidence relationship was clearly implied between the parties." (*Id.* at 17.)

In the Reply, Defendant argues that Plaintiffs ignore the economic loss doctrine and rehash their argument about a fiduciary duty arising from Defendant's supposedly "superior position" relative to Plaintiffs, which this Court previously rejected.  (Reply at 6.)  Defendant argues that Plaintiffs identify no new facts to support the idea that this alleged superior position gave rise to a fiduciary relationship between the parties, and they note that none of the cases Plaintiffs cite in support of their position found such a relationship in the bank-depositor context.  (*Id.* at 6-7.)

To establish a breach of fiduciary duty claim, a plaintiff must show "1) the existence of a fiduciary duty or relationship between the parties; 2) breach of that duty; and 3) resulting damages." *Read v. Profeta*, 397 F. Supp. 3d 597, 633 (D.N.J. 2019) (citation omitted).  "A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship." *F.G. v. MacDonell*, 696 A.2d 697, 704 (N.J. 1997).  "The essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position." *Id*. at 703-04. "Generally, 'there is no presumed fiduciary relationship between a bank and its customer.'" *Remtek Servs. v. Wells Fargo Bank, N.A.*, No. 19-12790, 2020 U.S. Dist. LEXIS 7678, at *11 (D.N.J. Jan. 16, 2020) (quoting *United Jersey Bank v. Kensey*, 704 A.2d 38, 44 (N.J. Super. Ct. App. Div. 1997).  However,

12

> [i]n *Kensey*, the Appellate Division of the New Jersey Superior Court articulated exceptions to the general rule that "creditor-debtor relationships rarely give rise to a fiduciary duty." Relying on the Restatement (Second) of Torts § 551, the Appellate Division explained that a duty may arise when a [bank] commits gross acts of misconduct or deceit, or under the "special circumstance" where a [bank] "knows or has reason to know that the customer is placing his trust and confidence in the bank and [is] relying on the bank . . . to counsel and inform him."

*Bank of Am., N.A. v. Westheimer*, 683 F. App'x 145, 149 (3d Cir. 2017) (quoting *Kensey*, 704 A.2d at 44-45).

Here, as in the initial Complaint, Plaintiffs again fail to plead that TD Bank acted deceitfully or engaged in gross misconduct that would give rise to a fiduciary relationship. Nor do Plaintiffs plead that some special circumstances existed sufficient to give TD Bank knowledge or reason to have knowledge that Plaintiffs' expectation of trust, confidence, and reliance in the bank was any greater than the normal expectations a depositor has in a bank. For these reasons, Plaintiffs' breach of fiduciary duty claim is dismissed with prejudice.

### d. Counts IV and VII: Common Law Fraud & NJ Consumer Fraud Act

In the FAC, Plaintiffs assert two claims sounding in fraud: Count IV for common law fraud, and Count VII for violation of the New Jersey Consumer Fraud Act ("NJCFA"). In support of the common law fraud claim, Plaintiffs allege that "Defendant omitted the facts that it would not properly investigate claims of unauthorized transactions or provide documentation to Plaintiff…that would support any determinations it makes during an investigation." (FAC ¶ 140.) Plaintiffs assert that Defendant knew that its process for investigating fraudulent transactions and deciding whether to reimburse claimants "was arbitrary opaque, inconsistent, unfair, deceptive, and, in effect, unappealable[,]" and that Defendants knowingly "omitted this material fact to induce Plaintiff[s']…agreement to the BDAA." (*Id.* ¶¶ 141, 144.) In support of the NJCFA claim, Plaintiff allege that "Defendant engaged in unconscionable commercial practices, deception, fraud,

13

false promises, false pretenses and/or misrepresentations fraudulently misrepresenting their fraud

policy and in the performance of the BDAA and Defendant's contract with Visa[.]"  (*Id*. ¶ 162.)

They further allege that Defendant violated the NJCFA by:

> Misrepresenting the adequacy of their security, account confirmation, and account creation systems; [k]nowingly omitting the fact that Defendant cannot adequately safeguard against unauthorized transactions; [c]harging fees, which presumably include costs associated with the provision of account security services; [p]roviding an unsafe platform for their customers, wherein customers are vulnerable to unauthorized transactions; [a]llowing unauthorized third-party hackers and cybercriminals to gain access to its customer's accounts and funds; [a]llowing unauthorized third-parties to take its customer's accounts and funds; [a]llowing unauthorized third-party hackers and cybercriminals to fraudulently utilize funds contained within Plaintiffs' and the Class Members' accounts; [f]ailing to adequately safeguard its customers' accounts and funds; [d]enying legitimate claims of unauthorized transactions; [f]ailing to conduct proper, good-faith investigations into fraud claims; [k]nowingly omitting the fact that Defendant would not properly investigate claims of unauthorized transactions; [k]nowingly omitting the fact Defendant would not provide documentation used to support its determinations made during investigations[;] [f]ailing to provide Plaintiff with the documentation Defendant used to support its and determinations, as it deceptively promises to do so under its own policies; [a]rbitrarily deciding which transactions are fraudulent and which are not; and [u]nlawfully converting customers' funds to its own and retaining those funds.

(*Id.* ¶ 166a-o.) [3]

In the Motion to Dismiss, Defendant first argues that Plaintiffs have failed to plead their

fraud claims with the particularity required by Federal Rule of Civil Procedure 9(b) because they

do not "state what statement [they] saw, or when and where [they] saw them."  (Mot. at 20-22.)

Next, Defendant argues that "Plaintiff[s'] allegations fundamentally consist of alleged failures to

perform, not deceptive statements of presently existing or past fact[,]" invoking *Corp. Incentives,*

*Inc. v. Unified Safe Guard, LLC*, 2021 WL 2666667, at *3 (D.N.J. June 29, 2021) for the

proposition that, under the NJCFA, "if a party makes a promise, contracts to perform it, and then

---

[3] The paragraph cited as ¶ 166 in the Opinion appears as ¶ 6 on page 27 of the FAC.

fails to do so, such failure to perform is merely a breach of contract which may give rise to an action on the contract." (*Id.* at 22 (cleaned up).)

In the Opposition, Plaintiffs argue that they "may use alternative means to inject precision and substantiation into their allegations of fraud, as long as the pleading sufficiently informs Defendant of the nature of the claim and allows for the preparation of a defense." (Opp. at 21.) In support of this position, they cite several cases recognizing that Rule 9(b)'s pleading standard is not a rigid requirement that plaintiffs recite the exact date, time, and place they encountered the allegedly fraudulent statements, but rather a threshold of specificity that plaintiffs must cross by providing sufficient context to make defendants aware of what and how they are alleged to have defrauded plaintiffs. (*Id.* at 20-21.) Plaintiffs then concede that fraud claims cannot be based solely on promises of future performance, but retort that Defendant's "failure to show that the transactions were processed in accordance with the Security Procedures call into question Defendant's ability and intent to perform and fulfill its standard of security." (*Id.* at 22-23.)

In the Reply, Defendants reiterate their positions that the FAC falls short of the Rule 9(b) standard and that Plaintiffs do not plead that Defendant made a material misrepresentation of a presently existing fact. (Reply at 8-10.)

The elements of common law fraud are "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Bestherb, Inc. v. Yinlink Int'l Inc.*, 2025 WL 559905, at *3 (D.N.J. Feb. 20, 2025) (citing *Allstate N.J. Ins. Co. v. Lajara*, 117 A.3d 1221, 1231 (N.J. 2015)). The elements of a NJCFA claim are "(1) unlawful conduct by defendant, (2) ascertainable loss, and (3) a causal relationship

15

between the unlawful conduct and the ascertainable loss." *Ciser v. Nestle Waters N. Am. Inc.*, 596 F. App'x 157, 160 (3d Cir. 2015).

Plaintiffs have not satisfied the Rule 9(b) standard, nor have they pleaded facts supporting the notion that Defendants materially misrepresented a presently existing fact. To the first point, while Plaintiffs correctly note that there is some leeway in Rule 9(b)'s particularity requirement, this leeway does not allow unsubstantiated claims to sustain a fraud claim. Plaintiff makes many claims describing Defendant's alleged conduct, as set out *supra*, but does not include the necessary factual predicates to tie these claims to distinct instances of fraudulent misrepresentation. The Court is thus left to wonder: at what point exactly did Defendant make these alleged misrepresentations and omissions? The causal chain in Plaintiff's theory is broken, or missing links.

To the second point, Plaintiffs' argument that Defendant has failed to show that they adhered to their own security procedures misses the point that, at this stage in the litigation it is *Plaintiffs'* burden to plead these facts. Plaintiffs have not pleaded sufficient facts, or offered sufficient arguments, to allow the Court to conclude anything besides the fact that Plaintiffs' claims relate more to the parties' rights and duties in the Agreement then they do to any presently known fact at the time the Agreement was signed. As such, Plaintiffs have failed to plead claims for common law fraud or a violation of the NJCFA, and accordingly Counts IV and VII are dismissed with prejudice.

### e.  Counts V & VI: Conversion & Unjust Enrichment

To support their conversion claim, Plaintiffs allege that "[t]he unauthorized transactions charged to Plaintiff[s]…should have been refunded to them[,]" and that Defendant knew as much.

16

(FAC ¶¶ 147-148.)  Plaintiffs allege that Defendant's failure to reimburse them amounted to a conversion which "deprived Plaintiff[s] [of their] right to immediate possession of those funds." (*Id.* ¶ 150.)  In support of their unjust enrichment claim, Plaintiffs allege that "Defendant owed a legal duty to Plaintiff[s]…to not unfairly or unduly take advantage of Plaintiff[s]…or commit acts to unjustly enrich itself at Plaintiff[s']…expense[.]" (*Id.* ¶ 153.)  They allege that by retaining the funds when they had no right to do so, Defendants enriched itself unjustly.

In the Motion to Dismiss, Defendant argues that the conversion claim must fail because Plaintiffs "cannot dispute that [they maintain] a traditional, contractual, debtor-creditor relationship with TD Bank" and Plaintiffs also concede that the "funds were taken by 'unauthorized third-parties' (not TD Bank)[.]"  (Mot. at 24.)  Defendant argues that the unjust enrichment claim must fail because unjust enrichment is a remedy suitable only for situations in which there is no express contract to govern the parties' options for compensation, and here the parties' relationship is governed by the BDAA.  (*Id.* at 24-25.)

In the Opposition, Plaintiffs argue that "Defendant's failure to follow reasonable commercial banking standards" concerning the disputed transactions "removes Defendant from the protection of debtor-creditor immunity because Defendant [actively] facilitated the conversion through conduct falling below reasonable banking standards."  (Opp. at 25-26.)  They cite *Clients' Sec. Fund of Bar of New Jersey v. Allstate Ins. Co.*, 219 N.J. Super. 325, 329 (App. Div. 1987) for the proposition that "[w]hile generally a depository bank handling a forged check may claim immunity against the payee under *N.J.S.A.* 12A:3–419(3), that immunity may be lost where the depository bank acted in bad faith or failed to adhere to reasonable commercial standards."  (*Id.* at 26.)  They also argue that the BDAA "does not expressly address Defendant's right to retain

17

customer funds after processing transactions that the customer immediately reported as fraudulent and explicitly denied authorizing." (*Id.* at 28.)

In the Reply, Defendant notes that the principle in *Clients' Sec. Fund* "relates to the situation where a bank seeks to avoid UCC liability to a payee for inadvertently processing a forged check[,]" whereas "[t]his case does not involve check-processing, and it also does not involve claims of immunity." (Reply at 11.) Defendant then argues that despite Plaintiffs' conclusions that TD Bank retained the funds at issue, the pleadings allege that a third-party took and used the funds, which precludes Plaintiff from meeting the elements of conversion or unjust enrichment. (*Id.* at 11-12.)

"The elements of common law conversion under New Jersey law are (1) the existence of property, (2) the right to immediate possession thereof belonging to [the] plaintiff, and (3) the wrongful interference with that right by [the] defendant." *Cap. Health Sys., Inc. v. Veznedaroglu*, 2017 WL 751855, at *10 (D.N.J. Feb. 27, 2017) (internal quotations omitted). "To establish a claim for unjust enrichment, a plaintiff must prove that (1) at plaintiff's expense; (2) defendant received benefit; (3) under circumstances that would make it unjust for defendant to retain said benefit without paying for it." *Fagan v. Fischer*, 2019 WL 5587286, at *19 (D.N.J. Oct. 30, 2019) (citing *Maniscalco v. Brother Intern. Corp. (USA)*, 627 F. Supp. 2d 494, 505 (D.N.J. 2009)). Plaintiffs' claims here fail because they have not pleaded facts supporting the idea that Defendant TD Bank took Plaintiffs' property or received some benefit deriving from the alleged third-parties' taking of Plaintiffs' property. Moreover, Defendant is correct that these claims cannot lie where the parties' relationship "is governed purely by contract." *Fagan*, 2019 WL 5587286 at *19. Plaintiffs' arguments to the contrary are inapposite, and accordingly, Counts V and VI are dismissed with prejudice.

## IV.    CONCLUSION

For the reasons stated herein, all counts are **DISMISSED with prejudice**.  An appropriate

order follows.

*/s/ Jamel K. Semper*
**Hon. Jamel K. Semper**
**United States District Judge**

Orig:    Clerk
cc:      Cari Fais, U.S.M.J.
          Parties